**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00121-CR**
_____

**ROSSY ANDERSON DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CR34648**
_____

**MEMORANDUM OPINION**

A jury found appellant Rossy Anderson Davis ("Appellant" or "Davis") guilty

of aggravated sexual assault of a child and assessed his punishment at life in prison.

*See* Tex. Penal Code Ann. § 22.021(a)(2)(B); *see also id.* § 12.32(a), (b). In a single

appellate issue, Davis argues that he is entitled to a new trial because the trial court

1

erred by denying his motion to suppress evidence obtained by an allegedly illegal seizure and search of his cell phone.[1] We affirm the trial court's judgment.

## BACKGROUND

Davis was charged by indictment stating that "on or about the 23rd day of May A.D. 2019," he did then and there

### COUNT I

[I]intentionally or knowingly cause the penetration of the sexual organ of Jennifer Lopez, a pseudonym, a child who was then and there younger than 14 years of age, by defendant's sexual organ,

### COUNT II

And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present in and to said court that on or about the 23rd day of May, 2019, in Liberty County, Texas, and anterior to the presentment of this indictment, ROSSY ANDERSON DAVIS, did then and there intentionally or knowingly cause the sexual organ of Jennifer Lopez, a pseudonym, a child who was then and there younger than 14 years of age, to contact or penetrate the mouth of Rossy Anderson Davis[.][2]

During Davis' June 6, 2019 interview, law enforcement officers requested Davis' cell phone as evidence. Davis was reluctant to provide his phone, citing its cost and his need for communication while job hunting. He stated that he would not surrender the phone absent a court order. After officers explained their authority to

---

[1] In the trial court, Davis also sought to suppress evidence obtained from his cell phone provider and his DNA specimen but he does not urge those arguments on appeal.

[2] The trial court sustained Davis' motion for a directed verdict as to Count Two and the case proceeded to verdict on Count One, only.

confiscate the phone and their intent to charge Davis with obstruction if he failed to comply with their request, Davis provided the phone to them. Officers later obtained a search warrant to search the contents of Davis' phone and copied its contents. Davis moved to suppress the evidence thus obtained, alleging that the phone was illegally seized and that the search was illegal because the search warrant for the contents of the phone was invalid. Davis bases this argument on his contentions that the affidavit supporting the search warrant mischaracterized Davis' surrender of his phone and that the affidavit omitted material information. We summarize below the evidence related to the search of Davis' cell phone.

Officer John Shaver's Testimony

At the hearing on Davis' Motion to Suppress Evidence, Officer Shaver ("Shaver") testified that he interviewed Davis on June 6, 2019. According to Shaver, he had probable cause to seize Davis' phone before the interview began, since he knew Davis had spoken with the victim and since Shaver had viewed text messages from the victim to Davis, thus indicating that Davis had used his phone during the commission of a crime.

Shaver was concerned that if Davis were permitted to leave the interview with his cell phone, Davis would destroy evidence by deleting images or messages from the phone. Shaver therefore believed that exigent circumstances allowed his warrantless seizure of Davis' phone. Although Shaver would have felt justified in

3

forcibly taking the phone from Davis, he instead chose to threaten Davis with arrest to persuade Davis to surrender the phone for analysis.

The trial court then found that "based upon statements that were made to the arresting officer as well as the defendant's admission that he communicated with the alleged victim[,]" Shaver had "probable cause to believe that the cell phone contained potential evidence of a crime and that exigent circumstances justified the seizure of the phone lest the evidence be destroyed." The court denied Davis' motion to suppress evidence obtained from the phone.

Davis' Recorded Interview

As the interview began, Shaver introduced himself to Davis and confirmed that Davis was not under arrest but was "free to get up and leave at any time." Shaver then asked Davis to provide his full name, date of birth, address, and phone number, and Davis did so, reciting his phone number. Davis also identified his cell phone service provider.

According to Davis, he met Jennifer through Facebook and they "chatted" and exchanged text messages, but Davis found Jennifer to be "forceful" and "pushy," which Davis did not like. Davis stated that he never met Jennifer in person and that he and Jennifer "never had sex." Davis did, however, admit that he and Jennifer talked about sex.

4

Davis recalled that the week before the interview, Jennifer's parents called him and told him that Jennifer was thirteen years old, not twenty-seven as she stated in her Facebook profile. Davis stated that after learning that Jennifer had misrepresented her age, he deleted her text messages and blocked her from communicating with him. Davis then claimed that Mother "tried to friend [him] on Facebook." Davis also told Shaver that Jennifer's father stated that Jennifer had "made a list of guys that she had sex with." Davis denied that Jennifer ever sent him any pictures and further denied that he drove his car to Cleveland on May 23, 2019.

Nearly halfway through the hour-long interview, Shaver informs Davis that Mother allowed law enforcement to search Jennifer's phone. When Shaver asks Davis why Jennifer would tell him "It hurt when I pee," Davis replies that when Jennifer was playing in the pool, someone "elbowed her or something." Shaver continues reading the information downloaded from Jennifer's phone, including Jennifer's reference to sexual intercourse and Davis stating, "It was going to happen one day. You're my fiancée, now." Davis also claimed that Jennifer's reference to ejaculation inquired about a phone call when the two of them were "talking dirty."

Shaver later tells Davis that the evidence they have discussed "is just a piece of what we have[,]" "we know a lot more than what we're telling you," and references phone records, social media records, and security video of Davis' vehicle.

5

When Shaver tells Davis to surrender his cell phone for analysis, about twenty minutes before the end of the recording, Davis says, "You know how much money my phone cost?" Davis then asks, "You gonna to pay me for it?" and "What I'm gonna do about a job?" After Shaver explains, "I'm not gonna go through it today, I am gonna have to get a search warrant," and that the phone would need to stay at the police station to preserve the integrity of the information it contained, Davis requests a court order requiring him to surrender his phone. Shaver explains that no such order yet exists, but "there will be one," and Davis responds "I'll give you my phone" after he is served with an appropriate court order. Shaver explains that permitting Davis to retain his phone "gives [him] the opportunity to destroy any kind of evidence" and Davis continues stating that "I need my phone for a job." Shaver explains that because the phone was used in the commission of a crime, Shaver has "the authority to take [the phone] off your person," and that if Davis resists, Shaver will "put [Davis] in jail for resisting and I'm still gonna take your phone." Davis continues to disagree with Shaver, but after additional discussion, Davis allows Shaver to take possession of the phone.

## ANALYSIS

In his sole issue, Davis contends that the trial court erred by overruling his motion to suppress, since, according to Davis, the seizure and search of the phone violated his rights under the Fourth Amendment. *See* U.S. CONST. amend. IV. Davis'

6

argument against the trial court's ruling is twofold: (1) he attacks the warrantless seizure of his cell phone, contending that officers seized his phone without either probable cause or exigent circumstances, and (2) the later search warrant authorizing the search of the phone is invalid as fruit of the poisonous tree due to the warrantless seizure.

We review the trial court's denial of a motion to suppress under a bifurcated standard of review. *Igboji v. State*, 666 S.W.3d 607, 612 (Tex. Crim. App. 2023); *Dugar v. State*, 629 S.W.3d 494, 497 (Tex. App.—Beaumont 2021, pet ref'd). We review the determination of whether a specific search and seizure was reasonable under a de novo standard, but we give the trial court almost complete deference in determining historical facts that depend on credibility and demeanor. *Igboji*, 666 S.W.3d at 612 (citations omitted); *Gallagher v. State*, Nos. 09-21-00307-CR, 09-21-00308-CR, 09-21-00309-CR, 09-21-00310-CR, 2023 WL 3085768, at *4 (Tex. App.—Beaumont Apr. 26, 2023, pet. ref'd) (mem. op., not designated for publication). When, as here, the trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Igboji*, 666 S.W.3d at 612 (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). Generally, we limit our review to the record of the suppression hearing. *Id.* (citation omitted).

<u>Warrantless Seizure</u>

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

"A warrantless search or seizure is per se unreasonable under the Fourth Amendment unless it falls within a recognized exception to the warrant requirement." *Igboji*, 666 S.W.3d at 613. The existence of exigent circumstances is one such exception. *Id.*; *Gallagher*, 2023 WL 3085768, at *5. This exception permits law enforcement to handle situations that compel the "need for official action and no time to secure a warrant." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013); *Igboji*, 666 S.W.3d at 613.

Once a defendant shows that a warrantless seizure has occurred, the burden shifts to the State to prove an exception to the warrant requirement applies. *Igboji*, 666 S.W.3d at 613. Generally, the State must satisfy a two-step process to validate a warrantless seizure based on exigent circumstances: (1) the existence of probable cause, and (2) an exigency. *Id.* at 613-14. "[P]robable cause exists 'when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality . . . or

8

evidence of a crime will be found.'" *Id*. at 613 (quoting *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005)). An exigency requiring an immediate action by law enforcement must exist, and one recognized category of exigent circumstances that justifies a warrantless intrusion by law enforcement is preventing destruction of contraband or evidence. *Id.* at 613-14.

To determine whether exigent circumstances exist, courts look to the totality of the circumstances when the seizure occurred. *Id.* at 613; *Gallagher*, 2023 WL 3085768, at *6. There is no requirement that the record show affirmative conduct on the part of the defendant. *Igboji*, 666 S.W.3d at 614. Rather, for exigent circumstances to justify a warrantless seizure of a cell phone, the record must show that officers reasonably believed the evidence would be imminently destroyed if they waited to obtain a warrant to seize the cell phone. *See id.* at 616-17; *Rafiq v. State*, 661 S.W.3d 827, 839-40 (Tex. App.—Beaumont 2022, pet. ref'd) (finding exigent circumstances justified the warrantless seizure of cell phone to obtain a search warrant and prevent destruction of evidence relevant to the crime); *Gallagher*, 2023 WL 3085768, at **6-7 (upholding warrantless seizure of cell phone where trial court could have reasonably found officer believed evidence of crimes would be found on phone and there was imminent risk evidence would be destroyed).

In this case, the State stipulated that Shaver seized Davis' phone without a warrant. The burden then shifted to the State to show an exception to the warrant

requirement, such as exigent circumstances as found in *Rafiq*. 661 S.W.3d at 839-40. Shaver's testimony at the hearing on Davis' motion to suppress shows that Shaver knew of the content of Jennifer's phone before he interviewed Davis. Shaver testified that Jennifer had sent suggestive text messages and nude photographs of herself to a phone number that Davis acknowledged was his. In addition, Davis admitted that he and Jennifer had communicated by phone. Shaver accordingly possessed reasonably trustworthy facts that would lead a reasonably prudent person to believe that Davis' cell phone contained inculpatory evidence. *See Igboji*, 666 S.W.3d at 613-14. Shaver thus had probable cause to seize Davis' phone. *See id.* To establish the exigent circumstances necessary to justify the warrantless seizure, Shaver testified that if Davis left with the phone, he believed that Davis would delete or destroy evidence from the phone. In response, Davis argues that there were no exigent circumstances because he was not "an immediate flight risk[]" nor was he "found actively trying to delete information[.]" Davis further responds that the evidence believed to be in his cell phone was not shown to be unavailable from any other source. Davis, however, has cited no authority showing that these criteria are relevant to a finding of exigent circumstances. In fact, *Igboji* holds that evidence of "affirmative conduct" is unnecessary. 666 S.W.3d at 612, 614. The *Igboji* court further declined to require a showing that information contained in a cell phone is unobtainable from other sources. *Id*. Instead, courts look to the likelihood that

10

evidence would be destroyed if the phone were not seized. *See Rafiq*, 661 S.W.3d at 839-40. Shaver testified to his belief that Davis would delete evidence off the phone if the phone remained in Davis' possession. The trial court, as the arbiter of credibility and demeanor of testimony, was entitled to credit Shaver's fear that Davis would destroy evidence if he were given the opportunity to do so. *See Igboji*, 666 S.W.3d at 612. Shaver's testimony, coupled with Davis' admission that he previously deleted Jennifer's communications from his cell phone, support the trial court's implied finding of exigent circumstances to seize Davis' phone despite the absence of a warrant. This situation is, by corollary, similar to when a police officer has probable cause to believe criminal activity is occurring inside a residence and the officer enters and secures the residence to prevent the destruction of evidence before a warrant can be obtained. *See Kentucky v. King*, 563 U.S. 452, 460 (2011) ("… the need 'to prevent the imminent destruction of evidence' has long been recognized as a sufficient justification for a warrantless search.") (*citing Brigham City v. Stuart*, 547 U.S. 398, 403 (2006); *see also Georgia v. Randolph*, 547 U.S. 103, 116, n.6, (2006); and *Minnesota v. Olson*, 495 U.S. 91, 100 (1990)). It follows that the contents of the cell phone obtained by the subsequent search warrant are not the fruits of an illegal search and were not subject to suppression.

For the reasons discussed above, we conclude that the trial court did not err in denying the motion to suppress. We overrule Davis' sole issue.

## CONCLUSION

Having determined that the trial court did not err in denying Davis' Motion to Suppress Evidence, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on February 3, 2026
Opinion Delivered March 11, 2026
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.

12